UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

S.C., a minor child, by and through her parents
K.S. and M.C.,

Plaintiffs,

v.

SEATTLE SCHOOL DISTRICT NO. 1, et al.,

Defendants.

CASE NO. C04-271RSM

ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT

This matter is before the Court for consideration of plaintiffs' motion for summary judgment in this appeal of an administrative action. Plaintiffs, parents of a minor child, filed this action to challenge an administrative order denying their request for reimbursement for their placement of the minor child S.C. at a private school during the 2003-2004 school year. The Court has considered the motion, response and reply, together with the administrative record. For the reasons set forth below, the Court denies plaintiffs' motion and affirms the decision of the Administrative Law Judge.

DISCUSSION

**I. Statutory Framework**

This action was brought by K.S. and M.C., the parents of minor child S.C., pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.* The IDEA provides

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT - 1

federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures. *See, e.g., Board of Education. of Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 179-80 (1982). The IDEA guarantees all disabled children a "free appropriate public education that emphasizes special education and related services designed to meet their unique needs. . . ." 20 U.S.C. § 1400(d)(1)(A). This free appropriate public education ("FAPE") is defined as special education and related services that: (1) are available to the student at public expense, under public supervision and direction, and without charge; (2) meet the state education standards; (3) include an appropriate education in the state involved; and (4) conform with the student's individualized education program ("IEP"). 20 U.S.C. § 1401(8).

The IEP is a written statement for an individual disabled child, crafted annually by a team that includes the child's parents and teacher, a representative of the local education agency, and, in appropriate cases, the child. 20 U.S.C. §§ 1401(11), 1414(d)(1)(B). An IEP must contain: (1) information regarding the child's present levels of performance; (2) a statement of annual goals and short-term instruction objectives; (3) a statement of the special educational and related services to be provided to the child; (4) an explanation of the extent to which the child will not participate with non-disabled children in the regular class; and (5) objective criteria for measuring the child's progress. 20 U.S.C. § 1414(d)(1)(A).

In addition to these substantive provisions, the IDEA contains numerous procedural safeguards. The local education agency must provide the parents or guardians of a disabled child prior written notice of any proposed change in the identification, evaluation, or educational placement of the child. 20 U.S.C. § 1415(b)(3). The agency also must give parents an opportunity to present complaints regarding any matter related to the education or placement of the child, or the provision of a FAPE to the child. 20 U.S.C. § 1415 (b)(6). Upon the presentation of such a complaint, the parent or guardian is entitled to an impartial due process administrative hearing conducted by the state or local educational agency, as determined by state law or by the state educational agency. 20 U.S.C. § 1415(f)(1). After the administrative hearing officer renders a decision, "[a]ny party aggrieved by the findings and decision" has

1  the right to bring a civil action in state or federal court.  20 U.S.C. § 1415(i)(2)(A).

2  **II. Factual and Procedural Background**

3          This case involves a dispute between the parents, M.C. and K.S. ("Parents"), and the Seattle

4  School District ("District") over the appropriate program and placement for their daughter S.C.

5  ("Student") for the 2002-2003 and 2003-2004 school years.  The Student, born January 9, 1990, is the

6  adopted daughter of the Parents.  The Student has been diagnosed with a neurobehavioral disorder due to

7  exposure *in utero*  to alcohol, along with early physical abuse, trauma, and abandonment prior to her

8  adoption; static encephalopathy secondary to intrauterine exposure to alcohol; Tourette's syndrome;

9  average to low intellectual abilities; and Sensory Integration Disorder.

10          Throughout the Student's school placement with the District, she had a history of refusing to

11  attend school, and an inability to maintain an in-school placement for the entire year, with the exception

12  of her fifth grade year.   In March of 2000, the District determined that the Student qualified for special

13  education services, and recommended she be placed in a self-contained special education program.

14          School refusal became a major concern for the Parents when the Student began the 2002-2003

15  school year.   The Student's IEP did not include a behavior plan or any plan to deal with her anxiety

16  issues or school refusal issues.  By December of 2002, the Student was refusing to attend school, and

17  therefore the Parents requested at home tutoring services from the District.   The District provided some

18  tutoring services during the months of March and April of 2003, but this was discontinued due to the

19  Student's behavior problems with the tutor.  The District did not assign another tutor.

20          In April of 2003, the District reevaluated the Student.  Pursuant to the reevaluation, the Student's

21  eligibility classification for special education services was changed from "Emotionally/Behaviorally

22  Disabled" to "Health Impaired".   The District psychologist's reasoning for changing the eligibility

23  category was that the Student's health conditions were the primary cause of her inability to attend school

24  and to benefit from her education.

25          On June 12, 2003, the District held an IEP team meeting.   At the meeting, the Parents provided

26  the District with a written request for the District to place the Student in a residential program at District

27

28   ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT - 3

1  expense.   On June 19, 2003, the District replied in writing to the Parents with a request to review the

2  Student's treating professional's records, and with an offer to place the Student for a 90-day evaluation at

3  Seattle Children's Home, a residential placement.   The Parents did not consent to the District's offer for

4  several reasons, mainly their concern that the 90-day placement offered was not long enough, and their

5  fear that the Student would check herself out of the school,[1] or refuse to attend while she was there.

6        On July 23, 2003, the Parents, through their attorney, informed the District that they were

7  rejecting the District's offer of a short-term evaluative placement and provided notice to the District that

8  they were considering a private residential placement at New Leaf Academy in Oregon.  New Leaf

9  Academy, however, declined to accept the Student.    Another IEP meeting occurred on September 4,

10  2003, with all required team members present.  Although still recommending the Seattle Children's Home

11  evaluative placement, the District proposed an alternative of placement of the Student at Hamilton

12  Middle School with specialized services to address her needs.  An amended IEP form was drawn up with

13  this proposal, to which the Parents indicated neither agreement nor disagreement.  Report of Proceedings

14  ("RP") 382.   On September 8, 2003, without notifying the District, the Parents unilaterally placed the

15  Student at New Haven, a residential school in Utah.[2]

16        After the Parents placed the Student at New Haven, the District filed for a due process hearing,

17  requesting an order to evaluate the Student at Seattle Children's Home.  The Parents then requested a

18  due process hearing to dispute the appropriateness of the District's provision of services for the 2002-

19  2003 school year, and to dispute the appropriateness of the District's proposed placement for the Student

20  for the 2003-2004 school year.  The requests were consolidated and a hearing was held before an

21  administrative law judge ("ALJ") in November of 2003.

22

23      [1]This was possible because Washington law does not permit the involuntary commitment of
children over the age of 13 unless they are a danger to themselves or others.  The Student was not a
candidate for involuntary commitment.

24

25      [2] Utah does not have the same commitment laws as Washington.  Testimony at the administrative
hearing by the clinical director of New Haven, John Stewart, indicated that while the students are not
26  locked in, they may be prevented from leaving the school by the staff ("staff-secured").   Physical
restraints may be used, and on one occasion of refusal the Student was physically carried to class and
restrained there to compel her attendance.  RP 1397-99.

27   ORDER DENYING PLAINTIFFS' MOTION
28  FOR SUMMARY JUDGMENT - 4

The ALJ issued her ruling on January 7, 2004, and entered the following order based upon her findings of fact and conclusions of law:

> 1. The District failed to provide the Student with a FAPE for the 2002-2003 school year;
>
> 2. The District's offer to place the Student in the Seattle Children's Home for a 90 day residential evaluation as of June 19, 2003, was appropriate and offered the Student a FAPE;
>
> 3. The Parent's request for reimbursement of their unilateral educational placement of the Student at New Haven is denied;
>
> 4. The District's request to override the Parents' failure to give consent for evaluation is denied;
>
> 5. The District's request to order the Student be placed at the Seattle Children's Home is denied; and
>
> 6. The Parents did not request any remedy other than reimbursement of the Student's placement at New Haven; therefore, no remedy is ordered.

RP 50-51.

Pursuant to the IDEA, the Parents request that this Court overrule that portion of the ALJ's decision denying them reimbursement for their unilateral placement of the Student at New Haven. They also seek attorney's fees and costs. The District requests the Court to instead affirm all aspects of the ALJ's decision.

### III. Legal Standard

#### a. Summary Judgment

A district court may review administrative decisions issued pursuant to the IDEA in the context of a motion for summary judgment. *Capistrano Unified School District v. Wartenberg*, 59 F.3d 884, 891-92 (9th Cir. 1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT - 5

1  of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257.

2  Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes

3  the use of summary judgment. *See California Architectural Building Products, Inc., v. Franciscan*

4  *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

5      Genuine factual issues are those for which the evidence is such that "a reasonable jury could

6  return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts are those which

7  might affect the outcome of the suit under governing law. *See id.*  In ruling on summary judgment, a

8  court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there

9  is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny*

10  *& Meyers*, 969 F.2d at 747).

11      **b.      Judicial Review of Administrative Decisions Under the IDEA**

12      Under the IDEA, the party challenging the administrative ruling has the burden of proof. *See*

13  *Clyde K. v. Puyallup School District, No. 3,* 35 F.3d 1396, 1399 (9th Cir. 1996).  Thus, in the instant

14  action, plaintiffs bear the burden of showing that the ALJ's decision should be overturned.

15      When reviewing administrative decisions under the IDEA, the Court shall base its decision on the

16  preponderance of the evidence. 20 U.S.C. § 1415(i)(2).  In considering that evidence, the "courts must

17  give 'due weight' to judgments of education policy." *Ojai Unified School District v. Jackson*, 4 F.3d

18  1467, 1472 (9th Cir. 1993).  How much deference should be accorded to the ALJ is a matter of

19  discretion for the Court. *Union School District v. B. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994).

20  However, the Court should give substantial weight to the ALJ's decision if the court finds that the

21  decision was careful, impartial, and sensitive to the complexities of the issues presented. *Ojai Unified*

22  *Sch.* Dist, 4 F. 3d at 1476.  Questions of law and mixed questions of fact and law are reviewed de novo,

23  unless the mixed question is primarily factual. *Amanda J. v. Clark County District*, 267 F.3d 877, 887

24  (9th Cir. 2001).

25      The Court has the power to "grant such relief as [it] determines is appropriate." 20 U.S.C. §

26  1415(i)(2)(B)(3).  "[E]quitable considerations are relevant in fashioning relief." *School Committee of*

27
28   ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT - 6

1  *Burlington v. Massachusetts Department of Education,* 471 U.S. 359, 374 (1985).  "The conduct of both

2  parties must be reviewed to determine whether relief is appropriate."  *W.G. v. Board of Trustees of*

3  *Target Range School District,* 960 F.2d 1479, 1486 (9th Cir. 1992).

4  **IV.  Discussion**

5      **1.  The Parents' Entitlement to Reimbursement as Compensatory Education.**

6         Compensatory education is an equitable remedy.  *See, Parents of Student W. v. Puyallup School*

7  *District No. 3,* 31 F.3d 1489, 1497 (9th Cir. 1994).  "Appropriate relief is relief designed to ensure that

8  the student is appropriately educated within the meaning of the IDEA."  *Id.*

9         The Parents did not request compensatory education as an element of relief in the administrative

10  proceedings.  Instead, they requested reimbursement as a remedy.  They assert now that the ALJ had the

11  discretion and authority to grant relief as she deemed appropriate.  The District, in response, argues that

12  the ALJ's decision should be affirmed because the Parents did not request reimbursement as

13  compensatory education; they are only now attempting to recast their request for relief as a request for

14  compensatory education.   The District acknowledges that the Court has the authority to order

15  compensatory education for a school district's failure to provide a FAPE, but asserts that there is no basis

16  for the Court to order compensatory education in this case, because there was no adjudication of what

17  the elements of an appropriate program of compensatory education would be.

18         The Court finds that, while it does have the authority to order compensatory education, it would

19  be inappropriate here.  As the Parents did not ask for compensatory education as a remedy in the

20  administrative proceedings, no evidence was presented at the administrative hearing as to how much

21  additional education would be necessary to remedy the District's denial of FAPE in 2002-2003.   Thus,

22  no evidence was presented that attendance at New Haven in 2003-2004 would make up for the lack of

23  educational progress in 2002-2003, and the District did not have the opportunity to respond to such

24  evidence by showing that there might be in-District programs (like tutoring, summer school, in-home

25  services, and so forth) that would adequately compensate the Student for the failure to provide a FAPE in

26  2002-2003.  *See. e.g. Parents of Student W.*, 31 F.3d at 1497.-

27

28   ORDER DENYING PLAINTIFFS' MOTION
  FOR SUMMARY JUDGMENT - 7

**2.  Denial of Reimbursement For the Parents' Unilateral Placement at New Haven.**

Like other forms of compensatory education, reimbursement is an equitable remedy.  *School Committee of Burlington,* 471 U.S. at 369.  In *Burlington*, the Supreme Court concluded that courts have the authority to reimburse parents retroactively for unilateral private school placements when the educational agency fails to offer a FAPE, and where the private placement is an appropriate one.  *Id.*  However, the Court also noted that "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk."  *Id.* at 373-74.

Since *Burlington*, regulations have been implemented to clarify when hearing officers and courts can order reimbursement for private school placement if a FAPE is at issue.  *See* 34 C.F.R. § 300.403; WAC 392-172-231.  A court or hearing officer may require a school district to reimburse the parents for the cost of private school placement where a school district fails to make a FAPE available in a timely manner prior to the student's enrollment in an appropriate private school placement:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary, or secondary school without the consent of or referral by the public agency, *a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate.*  A parental placement may be found to be appropriate by a hearing officer or a court even if it does not meet the State standards that apply to education provided....

34 C.F.R. § 300.403(c) (emphasis added); *see also* WAC 392-172-231(1).  However, even when a school district fails to make FAPE available in a timely manner, reimbursement for the private school placement may be reduced or denied as follows:

> The cost of reimbursement described in paragraph (c) of this section may be reduced or denied –
>
> (1) If –
>
> (i) At the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP team that they were rejecting the placement proposed by the public agency to provide FAPE to their

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT - 8

child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

(ii) At least ten (10) business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in paragraph (d)(1)(i) of this section;

(2) If, prior to the parents' removal of the child from the public school, the public agency informed the parents, through the notice requirements described in § 300.503(a)(1), of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for the evaluation; or

(3) Upon a judicial finding of unreasonableness with respect to actions taken by the parents.

34 C.F.R. § 300.403(d); *see also* WAC 392-172-231(2).

At the November 2003 administrative hearing, the District stipulated that New Haven was an appropriate placement for the Student, if the Parents could establish a right to reimbursement. RP 21. Accordingly, the question of whether or not the Parents are entitled to reimbursement turns on whether the District failed to offer an appropriate educational placement in a timely manner, and whether the Parents' conduct was unreasonable.[3]

The Parents argue that it was wrong for the ALJ to deny their request for reimbursement after finding that the District denied the Student a FAPE during the 2002-2003 school year. RP 43. The ALJ's denial of reimbursement was based in part upon her finding that the Parents failed to make the Student available to the District for a requested evaluation in June of 2003. The Parents contend that the ALJ's conclusion that the District had requested an evaluation of the Student is legally incorrect because the District did not comply with the IDEA's notice requirements,[4] which require the District to provide written notice to the parents of its intent to evaluate the child. Moreover, they argue, the District's

---

[3] Notably, the District has not appealed the ALJ's determination that it failed to provide FAPE during the 2002-2003 school year.

[4] *See* 20 U.S.C. § 1415(b)(3)(B) (stating that written prior notice to the parents of the child is required when an agency proposes to initiate or change the identification, evaluation, or educational placement of the child); 34 C.F.R. § 300.503 (describing the content of written prior notice to the parents of the child by the agency, including a description of the action proposed or refused by the agency).

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT - 9

1  proposed placement for the Student was not appropriate because it did not adequately address her school

2  refusal problems.

3      In response, the District asserts four separate reasons why the ALJ's denial of reimbursement for

4  the New Haven placement was correct, and should be affirmed.  First, the District contends that the

5  Parents are not entitled to reimbursement because the District offered an appropriate evaluative,

6  residential placement prior to the Parents' enrollment of the Student at New Haven. *See*  34 C.F.R.

7  300.403(c).  Second, reimbursement was properly denied because, at the September 4, 2003 IEP

8  meeting, the Parents did not notify the IEP team either that they were rejecting the proposed placement,

9  or that they intended to place the Student at New Haven.  *See* 34 C.F.R.  300.403(d)(1)(i).  Third, the

10  District argues that reimbursement was properly denied because the Parents did not give ten days written

11  notice to the District of their intent to privately place the Student.  *See*, 34 C.F.R. § 300.403(d)(1)(ii) and

12  WAC 392-172-231(2)(b).   Lastly, the District asserts that the Parents are not entitled to reimbursement

13  because they violated 34 C.F.R. § 300.403(d)(2) and WAC 392-172-231(2)(c), since they did not make

14  the student available for an evaluation.

15      The ALJ, in reaching her decision to deny reimbursement, stated the following Conclusions of

16  Law:

17      28.  Parents of a special education student, who unilaterally place the student in a private
         school, may be eligible for reimbursement for the expense of the private school, if the
18       school district did not make a FAPE available to the student prior to the student's enrollment
         in the private school.  WAC 392-172-231(1).
19
20      29.  However, the cost of reimbursement may be reduced or denied if the parents did not
         inform the district that they were rejecting the district's placement, including a statement
21       of the reasons they disagree with the placement and their intent to place the student privately.
         WAC 392-172-231(2).  The notice must be given either at the last IEP team meeting, or by
         written notice ten days prior to the removal of the student from the district.  *Id.*
22
23      30.  Costs may also be reduced or denied if the district responds within the ten days by giving
         proper notice of its intent to evaluate the student and the parents do not make the student
24       available for the evaluation.  WAC 392-172-231(2)(c).

25      31.  Finally, the regulation provides that the ALJ has the authority to reduce or deny
         reimbursement if the parents acted unreasonably.  WAC 392-172-231(2)(d).

26      32.  In the present case, it is true that the District failed to provide the Student a FAPE for
         the 2002-2003 school year.  However, the parents' request for reimbursement must be denied
27

28  ORDER DENYING PLAINTIFFS' MOTION
    FOR SUMMARY JUDGMENT - 10

for their failure to make the Student available for evaluation by the District as of June 2003. WAC 392-172-231(2)(c). Within seven days of receiving notice of the Parents' request to place the Student in a residential school, the District responded by providing written notice of its request to place the Student at Seattle Children's home for a 90 day residential evaluation. As discussed above, the District's request to evaluate the Student through a placement at the Seattle Children's Home was appropriate.

33. Likewise, as discussed above, the Parents' objections to the District's request were unreasonable. The District, the Parents and the Student could have all benefitted from the information to be gained from the evaluative placement. Had the evaluation been consented to immediately, it would not have substantially delayed the Student's education, for the evaluation would have been completed around the end of September 2003. Equally important, had the Student been placed at Seattle Children's Home during Summer 2003, she would have been spared the unfortunate incident at New Leaf. If must be noted that in placing the Student at New Leaf without appropriate evaluation, the Student was subjected to just the psychological harm the Parents now argue she would suffer by going to the Seattle Children's Home. It is now known that the attempted New Leaf placement was harmful to the Student, but the same cannot be concluded about the proposed Seattle Children's Home placement.

34. The Parents' request for reimbursement of the expenses related to the Student's placement at New Haven is denied.

RP 48-49.

The Parents contend that the ALJ's ¶ 32 conclusion is legally infirm because the District's June 19, 2003 letter, responding to the Parents' June 12, 2003 written request for a residential placement, did not meet the notice requirements of 34 C.F.R. § 503(a)(1). As set forth above, one basis for denial or reduction of reimbursement may be the Parents' failure to make the child available for evaluation, after "the public agency informed the parents, **through the notice requirements described in § 300.503(a)(1)**, of its intent to evaluate the child." 34 C.F.R. § 300.403(d)(2) (emphasis added). Section 503(a)(1) is very specific as to the required content of the notice, and the District cannot dispute the fact that the June 19 letter does not meet these requirements.

Instead, the District argues that the letter "essentially" complied with the notice requirement, and that "any technical deficiencies in the notice are irrelevant." District's Response, p. 39. It is not necessary for the Court to adopt the District's "essential compliance" argument, however, to uphold the ALJ's decision. The ALJ found, as an alternative basis for denying reimbursement, that the Parents' conduct was unreasonable. *See* 34 C.F.R. 300.403(d)(3). Her ¶ 33 analysis and conclusions, set forth above, when considered together with the rest of the 33-page opinion, represent just the type of careful

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT - 11

1  and impartial decision, sensitive to the complexities of the issues presented, to which this Court gives

2  substantial weight. *Ojai Unified School Dist.*, 4 F. 3d at 1476.

3     The District's June 19, 2003 letter, while it did not technically comply with the § 300.503(a)(1)

4  notice requirements, did adequately inform the Parents that the District needed an evaluation of the

5  Student before deciding on the Parents' request for residential placement.  In direct and timely response

6  to the Parents' June 12, 2003 letter requesting residential placement, the letter stated, "We are

7  considering your request for residential placement and have found that we need additional data in order

8  to fully consider and respond to your request. . . .While we are waiting for releases that will allow us to

9  obtain additional information the District would like to offer [Student] a 90-day placement at Seattle

10  Children's Home at District expense."  RP 937.   This was a reasonable request by the District, which

11  was met with an unreasonable refusal by the Parents.  As noted by the ALJ, had the Parents complied

12  with this request right away, the evaluation process could have been completed in time for the start of the

13  school year in September 2003, and the Parents' request for residential placement granted if that were

14  determined to be appropriate based on the evaluation.

15     The Parents state that they declined the Seattle Children's Home placement because of their

16  concern that the Student could "check herself out" and walk home.  According to the hearing testimony

17  of Bill Heusler, manager of residential service at Seattle Children's Home, a child over the age of 13

18  could indeed sign herself out by requesting the appropriate paperwork.  RP 2221.  However, that is a

19  lengthy process involving multiple interventions by staff, mental health workers, family and others.  RP

20  2221-2224.   If, at the end of that time, the child still insisted on leaving, she would be evaluated by

21  mental health professionals to determine whether she might be a danger to herself or to others.  RP 2234.

22  If so, they could initiate the process to obtain a court order for involuntary confinement and treatment.

23  RP 2223.  Thus, it was not as simple as "checking herself out" as the Parents feared.

24     Mr. Heusler also stated that it is possible for a child to simply walk out the door of Seattle

25  Children's Home.  RP 2231.  In that case, a staff member would follow the child and attempt to convince

26  her to return.  However, they would not physically restrain the child.  *Id.*  If the child continued to walk

27
28   ORDER DENYING PLAINTIFFS' MOTION
   FOR SUMMARY JUDGMENT - 12

1   home, the police would be notified, but the involuntary commitment process would not be initiated unless

2   the child was behaving in an unsafe or threatening manner.  RP 2232.  Once the child reached home, the

3   parents would be contacted for guidance on what to do.  RP 2233.

4         While it may have been this "walk away" possibility that the Parent feared, that concern  was

5   based on speculation and extrapolation of her school refusal history.  However, the Seattle Children's

6   Home is a residential treatment facility, not a school.   As the Parents declined to give the Seattle

7   Children's Home placement even a short trial, it is not known whether that placement would have

8   successfully addressed the Student's school refusal issues.  Indeed, the District's consulting psychologist,

9   Steven Sulzbacher, Ph.D., testified that the continuity of services that the Seattle Children's Home

10  offered had a high probability of benefitting the Student in her school refusal issues.  RP 2263.  Even if

11  the Student had chosen to leave Seattle Children's Home on her own, according to the testimony of Mr.

12  Heusler, her departure would have been handled in a safe and appropriate manner.   Moreover, as the

13  ALJ noted, it cannot be concluded that any harm would have come to the Student from the Seattle

14  Children's Home placement, in contrast to the actual harm that occurred from the Parents' attempted

15  placement at New Leaf.  The ALJ has thus stated sound reasons for her conclusion that the Parents acted

16  unreasonably in rejecting the proposed placement and depriving the District of the opportunity to

17  properly evaluate the Student's needs.

18        In setting forth her legal conclusions regarding reimbursement for the New Haven placement, the

19  ALJ listed three separate bases upon which such reimbursement may be reduced or denied.  RP 48.   In

20  addition to the two bases discussed above, she noted in ¶ 29 that the cost of reimbursement may be

21  denied if the parents did not give notice of their rejection of a proposed placement and their intent to

22  place the student privately.  Such notice must be given "either at the last IEP team meeting, or by written

23  notice ten days prior to the removal of the student from the district."  *Id.*  Here, the Parents enrolled the

24  Student at New Haven four days after the last IEP meeting on September 4, 2003, without either

25  informing the District at that meeting or providing timely written notice of their intent to do so.

26  Although the ALJ did not enter a separate conclusion that reimbursement should be denied on this basis

27

28   ORDER DENYING PLAINTIFFS' MOTION
    FOR SUMMARY JUDGMENT - 13

as well, her citation to this requirement in ¶ 29 indicates that it was duly considered.  This factor serves as further reason for upholding the ALJ's decision to deny reimbursement.  34 C.F.R. § 300.403(d)(1)(i) and (ii).

**V.  Conclusion**

The Court, having reviewed the record and considered the parties' memoranda and the carefully reasoned decision of the ALJ, finds ample support in the record for the denial of reimbursement for the Student's private placement at New Haven.  Although the ALJ could have required the District to provide that reimbursement following the District's failure to provide a FAPE for the year 2002-2003, her decision to deny that reimbursement due to unreasonable actions taken by the Parents was proper under the law and supported by the record in this case.  34 C.F.R. § 300.403(d)(3).   Accordingly, plaintiffs' motion for summary judgment is DENIED, and the decision of the ALJ is AFFIRMED in all respects.  The Parents' request for attorney's fees and costs under 20 U.S.C. § 1415(i)(3)(B) is DENIED, as they are not the prevailing party in this matter.

As this Order disposes of all issues in this matter, the Clerk shall enter judgment in favor of defendants.

Dated this 4th day of October, 2005

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT - 14